### John Druecker v. Sandusky Portland Cement Co.

1. CORPORATIONS—*Power of Agents to Bind by Admissions—Res Gestæ.*—Ordinarily, an agent of a corporation, as such, has no power to bind the corporation by an admission that it had previously made a contract. Such a statement, or admission, made after the transaction to which it relates is closed, can not be held to be a part of the *res gestæ.*

2. INSTRUCTIONS—*As to Witnesses Knowingly Exaggerating Material Facts.*—An instruction, that if a witness has willfully and knowingly exaggerated any fact or circumstance material to the issues in the case for the purpose of deceiving, misleading or imposing upon the jury, the jury have a right to reject the entire testimony of such witness, except in so far as corroborated by other evidence which the jury believe, or by facts and circumstances appearing in the case, is proper.

**Assumpsit,** for goods sold, etc. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed March 5, 1901.

SMITH, HELMER, MOULTON & PRICE, attorneys for appellant.

SAMUEL S. PAGE and DONALD M. CARTER, attorneys for appellee.

Druecker v. Sandusky Portland Cement Co.

Statement.—This is an action of assumpsit, brought by appellee against appellant on an account for cement sold and delivered. Appellant pleaded the general issue and several special pleas of set-off, setting up an alleged contract between appellant and appellee, made on December 22, 1897, whereby appellee agreed to sell and deliver to appellant 22,000 barrels of seasoned Medusa Portland cement during the season of 1898, the cement to be delivered to appellant at his warehouse in Chicago, at such times and in such quantities as appellant should order, and at prices of $1.75 per barrel in jute sacks, and $1.95 per barrel in barrels, if delivered by boat in shipments of 3,000 barrels each, and at a price of $1.83 per barrel in jute sacks, and $2.03 per barrel in wooden barrels, if delivered by rail; and by which appellant agreed to receive and pay for the cement at the prices named. The pleas set up the alleged contract, the failure of appellee to deliver the same, and damages for the breach.

It was agreed on the trial that appellee had a *prima facie* case for the full amount of his account, $3,928.75, subject to appellant's defense by way of recoupment or set-off. The jury returned a verdict for the above amount, thereby finding adversely to appellant's claim, and judgment was entered on the verdict. From the judgment the appeal here is prosecuted.

Mr. Justice Sears delivered the opinion of the court.

Counsel for appellant present three grounds, which they urge for a reversal of the judgment:

First. That the verdict is against the weight of the evidence on the issue raised by the pleas, which set up the alleged contract of appellee to furnish appellant 22,000 barrels of cement at agreed prices, and breach thereof.

Second. That the court erred in rejecting evidence proffered by appellant.

Third. That the court erred in instructing the jury.

We agree with the learned trial judge, that the verdict, finding in effect that no contract was made between appel-

lant and appellee for sale of 22,000 barrels of cement, was sufficiently sustained by the evidence. The evidence presents a square conflict. Appellant and his son testified positively to the making of an oral contract with Newberry, the agent of appellee. Newberry as positively denied that any such conversation as is narrated by appellant was had with him. Newberry is corroborated by the correspondence of the parties following the time of the alleged making of the contract. We think that the jury were fully warranted in finding that a preponderance of the evidence was lacking to sustain appellant's affirmative claim. They would, in our opinion, have been equally warranted in finding that the preponderance was with the appellee, which, so far as the recoupment and set-off are concerned, was a defendant.

We think it unnecessary to recite the evidence presented by the correspondence at length. It is enough to say that it goes to show that the parties had no contract for the sale of the cement in question, and that appellant, in his purchases after the date of the alleged contract, was merely buying from time to time on orders given and accepted by the appellee. Two letters written by the litigants sufficiently disclose that no such contract existed. One of these letters, dated March 9, 1898, and written by appellant, is as follows :

" SANDUSKY PORTLAND CEMENT Co.:
In reply to yours of the 8th, certainly I figure on getting that cement, as my stock is small. Besides, you know, I figure on putting your cement in my entire building and making the same an advertising card which you can show, too, with more pride than anything else. I expect to use of your cement 15 to 20,000 barrels this season, and I want you to reserve that amount for me. That is what I told Mr. Newberry when he was here."

The other letter written by appellee, under date of March 11, 1898, and in answer to the letter above quoted, is as follows :

" JOHN DRUECKER :
Your kind letter of the 9th received. Please accept our

thanks for your orders for two cars of cement in sacks, to be shipped as soon as possible. We will get one of these out for you to-morrow, but fear it will be impossible for us to ship the second for two or three days. We will, however, get it out for you as early next week as possible. Referring to shipment of $3,000 barrels by water, would say that we will make this shipment as soon as we can arrange for a boat. It will probably be early in April before we can accomplish this. We will keep you posted as to what arrangement we succeed in making. As to reserving 15 to 20,000 barrels of cement for you this year, would say it would be utterly impossible for us to do this. Our orders from near points, which pay us far better than to Chicago, are already more than twice as heavy as last year. We think we could probably furnish you with two carloads of 150 barrels each, per week, throughout the season. This would amount to about 10,000 barrels for the year from April 1st to December 1st. We can not promise to do better than this. We will make the shipment by water at the earliest possible moment."

If the latter of these letters might be deemed a self-serving statement, written to aid appellee in avoiding a contract, the former, at least, is free from any such suspicion and constitutes an admission in effect that appellant at that time had no contract with appellee for the sale of 22,000 barrels of the goods. The oral contract was alleged to have been made on December 22, 1897. If at the time the letter of March 9, 1898, was written, appellant had in fact a valid and subsisting contract with appellee for the sale of 22,000 barrels, it is incredible that he should by this letter be requesting a reservation of from 15,000 to 20,000 only. The letter states his agreement with Newberry as entirely different in amount contracted for from the statement made in his testimony at the trial, and it gives the transaction with Newberry as a request for a reservation instead of a contract for a specific amount. The jury were warranted in discrediting appellant's testimony and in finding from the evidence that no contract was in fact made.

The complaint as to exclusion of evidence by the court relates partly to a letter dated December 23, 1897, purporting to have been written by appellant to appellee,

a copy of which was proffered in evidence by appellant and excluded by the court. It is enough to say in justification of the ruling of the trial court, that there was no sufficient proof of a mailing of the letter to appellee. No evidence was presented to show how any envelope or cover in which the letter was placed was stamped or addressed.

Moreover, the evidence tended very strongly to establish that no such letter was ever sent to the appellee. Another letter of the same date and entirely different in its contents was sent to appellee, received and answered by it. It does not appear from the evidence that the disputed letter was received or answered by appellee.

It is also complained that the testimony of one Abbott, was improperly excluded. It was proposed to show by this witness that after the making of the alleged oral contract the witness heard Newberry, the agent of appellee, in effect admit the making of the contract. Upon the proffer of this evidence the following colloquy occurred between court and counsel :

" The Court: I suppose you do not claim that at the Bismark, or any interview, at which this witness (Abbott) was present, that the contract was made as between Newberry and Druecker ?

Mr. Smith : No, your honor.

The Court: But you only offer it as admissions by Newberry of a fact that had already transpired ?

Mr. Smith : That is the object, if the court please."

For the purpose indicated the evidence was incompetent. Newberry, as agent of the corporation, appellee, had no power to bind the corporation by an admission that it had previously made a contract. Such a statement or admission made after the transaction to which it related was closed, could not be held to be a part of the *res gestæ*. The D. & H. C. Co. v. Mitchell, 92 Ill. App. 577, and cases therein cited.

Counsel for appellant contend that the court erred in rulings upon instructions. The first and second instructions tendered by counsel for appellee, informing the jury that upon the claim of the appellant the burden of establishing

the same, and each item thereof, was upon appellant, were correct, and there was no error in giving them.

The fourth instruction tendered by counsel for appellee and given by the court is as follows:

" The court instructs you that if you believe from the evidence that any witness has willfully and knowingly sworn falsely to any material element in the case, or that any witness has willfully and knowingly exaggerated any fact or circumstance material to the issues in the case for the purpose of deceiving, misleading or imposing upon the jury, then the jury have a right to reject the entire testimony of such witness, except in so far as corroborated by other evidence which you believe, or by facts and circumstances appearing in the case."

A very similar instruction, containing a like direction as to testimony of a witness who may be found to have willfully exaggerated any material fact, for the purpose of deceiving, was considered by this court in Strehmann v. City, 93 Ill. App. 206.

As said by Mr. Presiding Justice Adams in that case, " the beaten path is a safe path," and when a form long approved may be as well adopted, it is questionable wisdom to try to improve upon it. But we held that the giving of the instruction as framed did not constitute error.

No other questions of procedure are presented.

Finding that the verdict is supported by the greater weight of the evidence, and that there is no error in the rulings of the learned trial judge in matters of procedure, the judgment is affirmed.